# McKool Smith

Daniel W. Levy
Direct Dial: (212) 402-9412
E-mail: dlevy@mckoolsmith.com

One Bryant Park
47th Floor
New York, NY 10036

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

May 20, 2019

By ECF
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street, Room 1320
New York, New York  10007

> Re:    United States v. Jon Montroll
>          18 Cr. 520 (RMB)

Dear Judge Berman

This firm represents Defendant Jon Montroll in the above-referenced action.

We write in advance of the sentencing currently scheduled for Wednesday, May 29, 2019, at 11:30 a.m., in response to the government's letter, dated May 9, 2019 ("Gov't 5/9 Letter"), and its revised proposed Order and Schedule of Victims ("Gov't 5/9 Proposed Order and Schedule").

For the reasons set forth below, the Court should enter an order of restitution in the amount of $167,438 and should credit Jon with having already paid $137,367.55 towards that amount, leaving $30,070.45 in unpaid restitution.

## I.    Pre-Hack Purchasers of Ukyo Loans Are Not Victims Under the MVRA

### A.    Applicable Law

As the government recognizes, in order to be a victim under the Mandatory Victim Restitution Act ("MVRA"), a person must have been "*directly and proximately harmed* as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."  18 U.S.C. § 3663A(a)(2) (emphasis added).

Under the MVRA, restitution may only be ordered for losses directly and proximately caused by the conduct comprising the count of conviction and may not be ordered on the basis of relevant conduct.  *United States v. Monfort*, 603 F. App'x 40, 44 (2d Cir. 2015) (citing *United States v. Vilar*, 729 F.3d 62, 97 (2d Cir. 2013)).

The Honorable Richard M. Berman
May 20, 2019
Page 2

Causation in criminal securities fraud cases has two components: (1) loss causation; and (2) transaction causation. *United States v. Ryan*, No. 10 Cr. 319, 2015 WL 10860631, *6 (N.D.N.Y. Mar. 3, 2015); *see also United States v. Marino*, 654 F.3d 310, 319-22 (2d Cir. 2011) (discussing loss and transaction causation); *see also United States v. Cummings*, 189 F. Supp. 2d. 67, 76-77 (S.D.N.Y. 2002) (adopting rule of causation in civil securities fraud cases for determining loss in criminal securities fraud cases); *United States v. Collardeau*, No. 03 Cr. 800 (WGB), 2005 WL 1106475, *4-5 (D.N.J. Apr. 28, 2005) (same).

Transaction causation is "the causal link between the defendant's misconduct and the victim's decision to enter into the securities transaction," including a decision to hold a security, and loss causation is the "causal link between the alleged misconduct and the economic harm ultimately suffered by the victim." *Ryan*, 2015 WL 10860631, *6; *Marino*, 654 F.3d at 321 (transaction causation refers to victim's reliance on a misrepresentation; loss causation refers to but-for cause or cause-in-fact).

B.      **The Hack, Not Jon's Failure to Disclose It, Prevented**
        **Redemption of the Ukyo Loans Purchased Before the Hack**

In order to satisfy it burden to demonstrate causation, the government argues that people who purchased Ukyo Loans *prior to the hack* can be victims of the securities fraud to which Jon pled guilty. Specifically, it asserts that:

> Montroll's concealment of the Exploit prevented users from redeeming their Ukyo.Loan notes before the malicious users drained the Bitfunder-linked account, and with it, the value of the Ukyo.Loan notes. . . .
>
> The Exploit did not instantaneously result in the loss of Bitcoin. Rather, the malicious users extracted approximately 6,000 coins over the course of a month. Had Montroll redeemed Ukyo.Loan holders' bitcoins upon the commencement of the Exploit, those holders would not have lost their investments. By concealing the Exploit—and, worse, by affirmatively describing the business as profitable—Montroll enabled the malicious users to steal Ukyo.Loan holders' investments and directly contributed to their victimization.

Gov't 5/9 Ltr. at 4-5.[1]

---

[1] Figures generated by the defense do not match precisely the figures set out in the government's May 9 letter. Principally, Jon does not agree with the balances set out on pages 2 and 3 of the government's letter. The WeExchange wallet could never have had a negative balance. The Court need not, however, resolve any factual issue associated with errors in the government's data in order to resolve the issue before the Court. Even assuming the accuracy of all of the government's data, its contention that pre-hack purchasers can be victims is still incorrect.

The Honorable Richard M. Berman
May 20, 2019
Page 3

The government's argument is inconsistent with the facts as it has otherwise represented them and is plainly incorrect. Jon's failure to disclose did not prevent those who had purchased Ukyo Loans before the hack from redeeming their loans. Rather, these purchasers were prevented from redeeming their loans because there were no Bitcoins from which Jon could have redeemed the Ukyo Loans. They had been stolen by hackers. The *theft* is what prevented redemption of the Ukyo Loans by those who had purchased before the hack. As a result, those who purchased Ukyo Loans prior to the hack cannot have been directly and proximately harmed by Jon's criminal conduct.

Although the government is correct that hackers stole Bitcoins from the WeExchange wallet "over the course of a month," Gov't 5/9 Ltr. at 4, they did not do so gradually. Rather, the hack occurred in stages. And when each stage is carefully analyzed, what emerges rather plainly is that *the hack* caused the loss to those who had purchased Ukyo Loans before the hack, *not* Jon's failure to disclose the hack.

**Stage 1 -- 99% of the Bitcoins in the WeExchange Are Stolen:** On or about July 18, 2013, Jon began offering for sale a security called a Ukyo Loan. There was nothing criminal about the offering. In the first ten days of the offering and prior to the hack, Jon had raised a meaningful number of Bitcoins and operated the Ukyo Loans consistent with his representations, including permitting redemptions and paying promised dividends. *See* PSR ¶ 16. Jon believed that the WeExchange wallet was a secure mechanism of storing Bitcoins, both his own and those of users.

The WeExchange wallet was the repository of two sets of Bitcoins, most importantly for present purposes: (1) Bitcoins that Jon had raised from the Ukyo Loans; and (2) Bitcoins stored by WeExchange users. *See* PSR ¶ 15 ("The WeExchange Wallet held all users' bitcoins in one common account with all other BitFunder and WeExchange users.").

Things changed substantially about ten days after the offering began. Starting on July 28, 2013, hackers began to steal substantial Bitcoins from the WeExchange wallet. According to the government, after the first two days of the hack (July 28 and 29, 2013), the balance in the WeExchange wallet was reduced from more than 4,000 Bitcoins to only 908 Bitcoins. This was a reduction of more than 77%. *Id.* ¶ 33.[2]

After a break of about 13 ½ hours (between 15:13 GMT on July 29, 2013, and 4:43 GMT on July 30, 2013), the hack resumed and hackers stole hundreds more Bitcoins.

---

[2] (4,000 - 908) / 4000 = 77.3%. The actual time for these Bitcoins to be stolen was slightly less than 28 hours (between 11:30 GMT on July 28, 2013, and 15:13 GMT on July 29, 2013).

The Honorable Richard M. Berman
May 20, 2019
Page 4

According to the government, by the next day (July 30, 2013), thefts by the hackers reduced the balance in the WeExchange wallet to 155 Bitcoins and, by the day after that (July 31, 2013), the balance was reduced to a mere 40 Bitcoins. *See id.* ¶ 33; *see also id.* ¶ 17; *see also United States v. Montroll*, 18 Mag. 1372, Complaint ¶ 21 (dated Feb. 20, 2018).[3]

By July 31, 2013, 99% of the Bitcoins in the WeExchange wallet had been stolen and only 40 Bitcoins remained. *See* PSR ¶ 33; Gov't 5/9 Ltr. at 1-2.

In this clear light, the reason why purchasers of Ukyo Loans were not able to redeem their Ukyo Loans is emphatically *not* because Jon failed to disclose the hack. It is because, within the first 28 hours of the hack, more than 77% of the Bitcoins held in the WeExchange system had been stolen and, only 14 hours later, more than 99% of the Bitcoins previously held in the WeExchange wallet had been stolen.

Even if Jon had Jon disclosed the hack after the first 28 hours of the hack, it would have been impossible for anyone with a claim to Bitcoins held in the WeExchange wallet to get more than a miniscule portion of their Bitcoins back. In drawing this conclusion, it must be remembered that, at this time, the people with a claim to the Bitcoins held in the WeExchange wallet included *both* those who had already purchased Ukyo Loans *and* the much larger group of people who simply held Bitcoins in the WeExchange wallet. *See* PSR ¶ 15.

The government contends that:

> Had Montroll redeemed Ukyo.Loan holders' bitcoins upon the commencement of the Exploit, those holders would not have lost their investments.

Gov't 5/9 Ltr. at 4-5. This cannot be right. There was no possibility that Jon could have redeemed the Ukyo Loans at this point. After the first 28 hours of the hack -- an event that was neither Jon's fault nor the result of any criminal activity of Jon -- only 908 Bitcoins remained in the WeExchange wallet and 77% of all of the Bitcoins had been stolen. And only 14 hours later, more than 99% of the Bitcoins had been stolen.

What was left at either point in time was *far* less than what was owed to those who had purchased Ukyo Loans before the hack and those who stored Bitcoins in the WeExchange wallet. The hack caused the loss to those who had purchased Ukyo Loans by then.

**Stage 2 -- Jon Injects 200 Bitcoins Back Into the System and They Too Are Stolen:**
What happened over the next few weeks should not change this conclusion about the cause of the loss to those who purchased Ukyo Loans prior to the hack. Indeed, it makes it even clearer that the cause of the losses to those who purchased Ukyo Loans before the hack was not Jon's criminal failure to disclose the hack, but rather the hack itself. As a result of the hack, there were simply no Bitcoins from which any redemptions could have been made.

---

[3] Almost all of the theft on July 30, 2013, took place in the 18-minute period between 4:43 GMT on July 30, 2013, and 5:01 GMT on July 30, 2013. Only.28 Bitcoins were stolen later on July 30, 2013.

The Honorable Richard M. Berman
May 20, 2019
Page 5

After the first few days of hack, which had drained the WeExchange wallet to only 40 Bitcoins, Jon sold assets and generated about 200 Bitcoins, which he deposited into the WeExchange wallet. He did so in order to be able to keep the system operating. *See* PSR ¶ 33. However, these too were stolen by hackers between August 2 and August 7, 2013. *See* Gov't 5/9 Ltr. at 2 (noting theft of approximately 200 Bitcoins between Aug. 2, 2013, and Aug. 7, 2013).[4]

Again, at this point, there were virtually no Bitcoins from which either to redeem the Ukyo Loans or to honor the claims of those who stored Bitcoins in the WeExchange wallet.

**Stage 3 -- Hackers Steal the Newly Raised Bitcoins:** Another source of Bitcoins into the WeExchange wallet was the continued sale of Ukyo Loans after Jon had detected, but failed to disclose, the hack, which is part of the criminal conduct to which Jon has pled guilty. This conduct resulted in an inflow of an additional 978 Bitcoins into the WeExchange wallet after Jon learned of the hack. *See* PSR ¶ 18.

However, any remaining Bitcoins in the WeExchange wallet were stolen by hackers on August 27. Although Jon had taken steps to identify all of the usernames that the hackers were using to steal from the WeExchange wallet and to protect the WeExchange wallet, they used different ones and were able to steal the newly raised Bitcoins from the WeExchange wallet on August 27, 2013. *See* Gov't 5/9 Ltr. at 2.[5]

\*　　\*　　\*

Beyond the fact that, through no fault of Jon, hackers stole the Bitcoins that could have mitigated the losses to those who purchased Ukyo Loans after the hack, the government has not demonstrated reliance by any particular holder of Ukyo Loans on the omission by Jon of the information about the hack.

That is, the government has not demonstrated a causal connection between a post-hack Ukyo Loan purchaser's decision not to redeem the Ukyo Loan and Jon's failure to disclose the hack. Perhaps some purchasers of Ukyo Loans, had the hack been disclosed, may have believed that the stolen Bitcoins could be recouped by Jon, who was trying to do just that, and, therefore, would have held the Ukyo Loans despite disclosure of the hack. Or perhaps some were not closely following the Ukyo Loans and would not ever have received a communication from Jon about the hack.

This too renders the government unable to prove transaction causation. Without an efficient market, the government cannot presume reliance. *See United States v. Stein*, 846 F.3d 1135, (11th Cir. 2017) (Pryor, C.J., concurring) (noting that "Second and Sixth Circuits have

---

[4] Half of these approximately 200 Bitcoins were stolen in a one-minute period between 0:19 GMT on August 2, 2013, and 0:20 GMT on August 2, 2013. The remainder were stolen on August 7, 2013 (about 70 Bitcoins) and August 7, 2013 (about 31 Bitcoins).

[5] The actual amount of time for these Bitcoins to be stolen was slightly less than 4 hours (between 15:38 GMT on August 27, 2013, and 19:24 GMT on August 27, 2013).

The Honorable Richard M. Berman
May 20, 2019
Page 6

recognized that in appropriate cases the government may employ the [presumption of reliance established by *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)] to establish actual loss under . . . the MVRA"); *see, e.g., United States v. Gushlak*, No. 03 Cr. 833, 2011 WL 3159170, at *3 (E.D.N.Y. July 26, 2011) (transaction causation is established by proving that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction").

As a result, the Court should adopt Jon's calculation of loss for restitution purposes, $167,438, not the government's inflated loss.

## II.     Other Issues Regarding Restitution

### A.     Credits

#### 1.     $25,000 Paid to Victims of Misappropriation

The government opposes a credit against Jon's restitution in the amount of $25,000.  The government does not dispute the payment.  Instead, it takes the position that the $25,000 paid is not part of any restitution now sought by the government.  Gov't 5/9 Ltr. at 6.

The factual predicate for the plea agreement that the defense entered into was that the figure cited in the plea agreement, $167,438, was the loss for which the government was seeking restitution and that this amount included approximately $25,000 of restitution to the victims of misappropriation.  It was months after Jon's March 30, 2019, submission, in which he made clear that he had entirely repaid the victims of misappropriation, that the government took for the first time the position that the amount cited in the plea agreement did not include any loss for misappropriation.

The government's new theory about what losses were included in the figure contained in the plea agreement should be rejected and Jon should be credited with the $25,000 he has already paid.

As Jon has previously noted, Jon's extraordinary efforts at restitution are reflected in the fact that, when he distributed these 282 Bitcoins, he was returning the dollar equivalent of more than $200,000 to WeExchange users, more than eight times the misappropriated amounts.  *See* Def. 3/30 Ltr. at 9 (ECF No. 35).  The notion that he would not be credited with these efforts because the government has never bothered to focus on this loss before is, in a word, unfair.

#### 2.     The Government's Corrections Do Not Fully Credit Jon for Repurchases of Ukyo Loans

The government claims to have corrected its proposed restitution to take account of Jon's repurchases of Ukyo Loans from the purchasers of Ukyo Loans, resulting in a reduction in restitution sought by the government of $29,092.28 (from $212,629.32 to $183,530.04).  *See* Gov't 5/9 Ltr. at 2, 6.  The government is incorrect and has not accurately calculated the reduction as a result of the repurchases by Jon.

The Honorable Richard M. Berman
May 20, 2019
Page 7

Following the hack, Jon repurchased $95,556.01 worth of Ukyo Loans from those who had purchased Ukyo Loans. Of this, $19,060.52 was repurchased from those who purchased prior to the hack and $76,495.49 was repurchased from those who purchased Ukyo Loans after the hack. Attached hereto as Exhibit UU is a chart showing all of the repurchases.[6]

Accordingly, if only the post-hack purchases generate loss for restitution purposes, as Jon has requested, then Jon should be credited with $76,495.49 towards his restitution obligation.

On the other hand, if loss for restitution purposes encompasses both pre-hack and post-hack Ukyo Loan purchases, as the government has requested, then Jon should be credited with the full $95,556.01 towards his restitution obligation.

### 3.   Other Amounts Credited to Post-Hack Ukyo Loan Purchasers

The government opposes additional credits towards Jon's restitution obligation, contending that its calculations already incorporate dividends and other payments made to holders of the Ukyo Loans. *See* Gov't 5/9 Ltr. at 5.

The government's contention is entirely unsupported and, despite substantial effort to do so, the defense has been unable to confirm that the government has credited, for example, dividends paid on Ukyo Loans. Other than providing what it contends is a final loss figure in its proposed restitution order, the government has done nothing to prove up the losses associated with these victims.

The defense stands by the credits against loss asserted in Exhibit DD to its letter, dated January 21, 2019 (ECF No. 29).

Specifically, for the reasons set forth in its January 21, 2019, Letter, *see* Def. 1/21 Ltr at 1-2 & Exh. DD, the defense maintains that 50% of the various categories identified on Exhibit DD (BitFunder User #1 Loan Purchases, BitFunder User #10 Loan Purchases, Ukyo.Loan Dividends Paid Out, and BitFunder User #1 & #2 Options) should be credited against loss.[7]

This amounts to 50% of $31,744.12, or $15,872.06. *See* Exh. DD.[8]

If the government is correct that pre-hack purchasers of Ukyo Loans are victims of Jon's offense, then the full amount of these items, $31,744.12, should be credited against loss.

---

[6] Jon had previously estimated that these amounts totaled 50% of $60,392.17. *See* Def. 1/21 Ltr. at 1-2 & Exh. DD. He has now calculated this amount with greater precision.

[7] The largest category on Exh. DD, buybacks, is addressed immediately above in Section II.A.2.

[8] $2,167.66, + $307.73 + $19,526.01 + $9,742.72 = $31,744.12 ; $31,744.12 ÷ 2 = $15,872.06.

The Honorable Richard M. Berman
May 20, 2019
Page 8

### B.   Proposed Restitution Order

The government's proposed restitution order asks that the Court order the following:

> Consistent with 18 U.S.C. § 3664(d)(5), the Government shall have 90 days from the date of sentencing to request an amended order of restitution, apportioning losses between identifiable victims of the offense charged in Count One.

Gov't 5/9 Proposed Restitution Order.

The problem is that the relief sought by the government is *not* consistent with Section 3664(d)(5).  Section 3664(d)(5) provides:

> *If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.*  If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order.  Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

Nowhere has the government contended that any victim's losses are not ascertainable.  In fact, it has submitted a 30+ page list of what it contends are losses calculated to the penny.  By the plain language of Section 3664(d)(5), it is not applicable.

*United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), which the government cites, *see* Gov't 5/9 Ltr. at 5, does not render Section 3664(d)(5) applicable to the case.  Quite to the contrary, *Catoggio* precludes an award of restitution to victims that the government has not identified:

> In our view, however, the district court did err in ordering restitution to unidentified, as opposed to unidentifiable, victims and in an amount ($80 million) that may not represent the actual losses to those victims.  The MVRA is clear that restitution can only be imposed to the extent that the victims of a crime are actually identified, 18 U.S.C. § 3663A(c)(1)(B).

*Id.* at 328.

*Catoggio* does not support the 90-day period of time to reapportion losses among identified victims because the government has not informed anyone that any victim's losses are not ascertainable.

The Honorable Richard M. Berman
May 20, 2019
Page 9

And, separately, *Catoggio* precludes an award of restitution to an unidentified victim, which is precisely what the government seeks to do with respect the entry on page 32 of its Proposed Order and Schedule. As Jon's prior sentencing submissions make clear, Jon is sincerely committed to making restitution to the victims of his criminal conduct. However, without more information about how the government purported to calculate the amount it seeks for this unidentified victim and despite its efforts, the defendant was unable to determine anything about who this person might have been. Under no circumstances can the Court award restitution to a person that the government has failed to identify.

## III. <u>Conclusion</u>

For the reasons set forth above and in Jon's prior sentencing submissions, the Court should impose a sentence of probation with conditions of home detention and community service that reflect the seriousness of the offense and adequately balance the other factors that the Court must consider under 18 U.S.C. § 3553(a).

Based on the restitution information provided to date, the Court should credit Jon with restitution payments of:

(a) a $20,000 payment to the Registry of the Court, *see* Def. 3/30 Ltr. at 9 & Exh. RR;

(b) a $25,000 payment to the victims of misappropriation, as set forth above in Section II.A.1;

(c) $76,495.49 in payments to the post-hack purchasers of Ukyo Loans, as set forth above in Section II.A.2; and

(d) $15,872.06 in other payments to the post-hack purchasers of Ukyo Loans, as set forth above in Section II.A.3,

towards his agreed-upon restitution of $167,438, leaving total unpaid restitution of $30,070.45.

If the Court determines that pre-hack purchasers of Ukyo Loans are victims for restitution purposes, then the credits against loss should be increased by an additional $19,060.52 and an additional $15,872.06, leaving no unpaid restitution, as set forth above in Section II.A.2-3.

Respectfully submitted,

/s/

Daniel W. Levy

Attach. (Exh. UU)

Cc:    Andrew Thomas (by ECF)
       Assistant United States Attorney

Exhibit DD — Buybacks of Ukyo Loans

| Date Time | Description | Buyback Amount in Shares | Buyback Rate | BTC | BTC Daily Value | USD Value | BitFunder User ID | Pre-Hack Purchaser? (y or n) |
|---|---|---|---|---|---|---|---|---|
| 7/31/2013 15:05 | Receive Transfer From: t456<br>Ukyo.Loan: 2000 Share/s | 2000 | 0.01 | 20 | $97.91 | $1,958.20 | 693 | y |
| 8/2/2013 21:12 | Receive Transfer From: nebulus<br>Ukyo.Loan: 10765 Share/s | 10765 | 0.01 | 107.65 | $97.23 | $10,467.89 | 32 | y |
| 8/4/2013 17:07 | Receive Transfer From: hwmax<br>Ukyo.Loan: 2375 Share/s | 2375 | 0.01 | 23.75 | $96.60 | $2,294.25 | 3613 | y |
| 8/5/2013 21:01 | Receive Transfer From: logik<br>Ukyo.Loan: 1928 Share/s | 1928 | 0.01 | 19.28 | $96.92 | $1,868.62 | 307 | y |
| 8/6/2013 22:14 | Receive Transfer From: Frank99<br>Ukyo.Loan: 743 Share/s | 743 | 0.01 | 7.43 | $97.13 | $721.68 | 1302 | n |
| 8/7/2013 7:49 | Receive Transfer From: babefoot<br>Ukyo.Loan: 3509 Share/s | 3509 | 0.01 | 35.09 | $96.92 | $3,400.92 | 1248 | n |
| 8/8/2013 14:43 | Receive Transfer From: hashbox<br>Ukyo.Loan: 15 Share/s | 15 | 0.01 | 0.15 | $94.77 | $14.22 | 4564 | y |
| 8/10/2013 19:38 | Receive Transfer From: CanadianPsycho<br>Ukyo.Loan: 4500 Share/s | 4500 | 0.01 | 45 | $93.29 | $4,198.05 | 753 | n |
| 8/10/2013 21:05 | Receive Transfer From: kckoch<br>Ukyo.Loan: 50 Share/s | 50 | 0.01 | 0.5 | $93.29 | $46.65 | 5049 | y |
| 8/27/2013 17:47 | Receive Transfer From: btcman<br>Ukyo.Loan: 3000 Share/s | 3000 | 0.01 | 30 | $117.45 | $3,523.50 | 6235 | n |
| 9/8/2013 14:04 | Receive Transfer From: fid<br>Ukyo.Loan: 2035 Share/s | 2035 | 0.01 | 20.35 | $116.59 | $2,372.61 | 4436 | y |
| 9/15/2013 0:34 | Receive Transfer From: bitmunter<br>Ukyo.Loan: 18 Share/s | 18 | 0.01 | 0.18 | $124.58 | $22.42 | 4442 | y |
| 9/17/2013 4:22 | Receive Transfer From: bitmunter<br>Ukyo.Loan: 3 Share/s | 3 | 0.01 | 0.03 | $125.97 | $3.78 | 4442 | y |
| 10/4/2013 10:14 | Receive Transfer From: squiggle<br>Ukyo.Loan: 2200 Share/s | 2200 | 0.01 | 22 | $121.29 | $2,668.38 | 3853 | n |
| 10/6/2013 12:50 | Receive Transfer From: squiggle<br>Ukyo.Loan: 2000 Share/s | 2000 | 0.01 | 20 | $121.68 | $2,433.60 | 3853 | n |
| 10/6/2013 21:45 | Receive Transfer From: glivel<br>Ukyo.Loan: 1600 Share/s | 1600 | 0.01 | 16 | $121.68 | $1,946.88 | 7355 | n |
| 10/7/2013 4:09 | Receive Transfer From: glivel<br>Ukyo.Loan: 2600 Share/s | 2600 | 0.01 | 26 | $123.24 | $3,204.24 | 7355 | n |
| 10/8/2013 17:35 | Receive Transfer From: CanadianPsycho<br>Ukyo.Loan: 6000 Share/s | 6000 | 0.01 | 60 | $124.32 | $7,459.20 | 753 | n |
| 10/9/2013 4:59 | Receive Transfer From: FanRudAn<br>Ukyo.Loan: 103 Share/s | 103 | 0.01 | 1.03 | $125.84 | $129.62 | 5602 | n |
| 10/21/2013 0:54 | Receive Transfer From: Baloo<br>Ukyo.Loan: 18 Share/s | 18 | 0.01 | 0.18 | $174.18 | $31.35 | 6358 | n |
| 10/23/2013 9:58 | Receive Transfer From: ucm<br>Ukyo.Loan: 140 Share/s | 140 | 0.01 | 1.4 | $200.62 | $280.87 | 2998 | n |
| 10/26/2013 7:48 | Receive Transfer From: 2dm<br>Ukyo.Loan: 250 Share/s | 250 | 0.01 | 2.5 | $175.90 | $439.75 | 5080 | n |
| 10/29/2013 15:49 | Receive Transfer From: hekiman<br>Ukyo.Loan: 1500 Share/s | 1500 | 0.01 | 15 | $198.19 | $2,972.85 | 2813 | n |
| 10/31/2013 9:54 | Receive Transfer From: Syloq<br>Ukyo.Loan: 6 Share/s | 6 | 0.01 | 0.06 | $198.23 | $11.89 | 5 | y |
| 11/4/2013 16:57 | Receive Transfer From: DISCOVERY<br>Ukyo.Loan: 1500 Share/s | 1500 | 0.01 | 15 | $225.20 | $3,378.00 | 6218 | n |
| 11/5/2013 5:10 | Receive Transfer From: strello<br>Ukyo.Loan: 1609 Share/s | 1609 | 0.01 | 16.09 | $239.29 | $3,850.18 | 22 | n |
| 11/8/2013 12:13 | Receive Transfer From: mgio<br>Ukyo.Loan: 5000 Share/s | 5000 | 0.01 | 50 | $323.77 | $16,188.50 | 1933 | n |
| 11/13/2013 14:16 | Receive Transfer From: Ahardie01<br>Ukyo.Loan: 5000 Share/s | 5000 | 0.01 | 50 | $393.28 | $19,664.00 | 7859 | n |
| 11/13/2013 18:46 | Receive Transfer From: HooperLite<br>Ukyo.Loan: 1 Share/s | 1 | 0.01 | 0.01 | $393.28 | $3.93 | 2489 | n |
| | Totals | 60468 | | 604.68 | | $95,556.01 | | |
| | Buybacks from Post-Hack Purchasers | 41273 | | 412.73 | | $76,495.49 | | |
| | Buybacks from Pre-Hack Purchasers | 19195 | | 191.95 | | $19,060.52 | | |